UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD-TECH ELECTRONIC CO., LTD., | CASE NO.  17-cv-5028 |
| Plaintiff, | **ECF Case** |
| v. | **COMPLAINT** |
| EATON ELECTRIC HOLDINGS LLC; COOPER LIGHTING LLC; and DOES 1 through 10, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Board-Tech Electronic Co., Ltd. ("Board-Tech"), by its attorneys Kirkland &

Ellis LLP, for its complaint against Defendants Eaton Electric Holdings LLC, Cooper Lighting,

LLC, and Does 1-10 (collectively, "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for false advertising, unfair, unlawful, and deceptive business

practices, and unjust enrichment arising from Defendants' false and misleading marketing and

advertising of their commercial and consumer light switches sold in New York and throughout

the United States. Defendants advertise that their switches comply with the North American

industry standard guidelines for safety. Compliance with these rigorous published standards,

which consumers and retailers demand, and numerous federal, state, and local regulations

***require***, is a significant barrier to entry for new competitors in the lucrative light switch market

in which Defendants are a major player. More importantly, these standards protect United States

residents from property damage, injury, and death. But although Defendants tout their

compliance with these standards in their sales materials, their packaging, and even on their

products, independent testing has revealed that the products they offer for sale do not meet the rigorous and exacting demands of the standards.

2.   By this action, Board-Tech seeks to (i) enjoin Defendants from making any further false and misleading claims about their products' compliance with safety standards; (ii) require Defendants to disseminate corrective advertising; and (iii) recover damages for the harm caused by Defendants' false and misleading claims.

## PARTIES

3.   Plaintiff Board-Tech is a Taiwanese corporation having its principal place of business at 6F-10, No. 16, Lane 609, Section 5, Chung Hsin Rd., San Chung, Taipei Hsien, 241, Taiwan (ROC). Board-Tech was established in 1980 and manufactures and sells electronic products primarily in the Taiwan, U.S., Canada, and Southeast Asia markets. Among Board-Tech's products are a series of light switches that compete with Defendants' products in the United States market.

4.   Upon information and belief, Defendant Eaton Electric Holdings LLC ("Eaton") is a Delaware Corporation corporation with its principal place of business at 600 Travis Street, Suite 580, Houston, Texas 77002-1001. Eaton manufactures and sells electrical products and tools, including lighting fixtures, throughout the United States.[1]

5.   Upon information and belief, Defendant Cooper Lighting, LLC ("Cooper") is a Delaware Corporation with its principal place of business at 1121 Highway 74 S., Peachtree City, Georgia 30269. Cooper manufactures and sells electrical components and tools in the United States and internationally. Upon information and belief, Cooper was acquired by Eaton in November 2012, and since 2015, has sold lighting under the "Eaton" brand.

---

[1] https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=26003985 (last accessed May 31, 2017).

2

6.   The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named as DOES 1 through 10, inclusive, are unknown to Board-Tech, who therefore sues those defendants by such fictitious names. Board-Tech is informed, believes, and thereon alleges that each of the defendants sued herein as DOES 1 through 10, inclusive are and were the agents, employees, parents or subsidiaries of each and every other defendant and are legally responsible in some manner for the events and happenings herein referred to and proximately caused injuries and damages to Board-Tech as herein alleged. Board-Tech will seek to amend its complaint to allege the true names and capacities of such defendants when ascertained.

## JURISDICTION AND VENUE

7.   This is an action for false advertising arising under the Lanham Act, 15 U.S.C. § 1125(a), and for false advertising, unfair, unlawful, and deceptive business practices, and unjust enrichment under the laws of the States of New York, California, Illinois, and Texas.

8.   This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the related state and common law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

9.   This Court has personal jurisdiction over Defendants in that Defendants advertise and sell their products to retailers and consumers in New York. Additionally, Defendants and their agents have prepared, disseminated, and made available internet advertisements, catalogs, and related materials, all of which are at issue here, in this District.

10. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 in that Defendants are subject to personal jurisdiction in this District at the time the action is commenced and a substantial part of the events or omissions on which the claims in this matter are based occurred in this district.

## FACTUAL ALLEGATIONS

***Substandard Lighting Equipment Places the Public at Risk.***

11. The kinds of light switches this case concerns are ubiquitous. They dim, and turn on and off the lights in homes, schools, and businesses throughout the world. But, for good reason, if a manufacturer wants to sell its switches in ***this*** country, our governments, retailers, and consumers demand that those switches comply with rigorous safety standards.

12. According to the U.S. Fire Administration ("USFA"), on average, 28,600 electrical fires ignite in the U.S. per year.[2] These fires cause 310 deaths and 1,100 injuries per year. Electrical fires also cause $1.1 billion in property damage and loss.[3]

13. The National Fire Protection Association ("NFPA") also creates a yearly report on Electrical Fires.[4] According to the NFPA March 2017 Report, from 2010 to 2014, approximately 16,070 non-residential building fires involved electrical distribution or lighting equipment.[5] These fires resulted in an estimated 12 civilian deaths, 210 civilian injuries, and $614 million in direct property damage.[6]

14. Electrical distribution, lighting, and power transfer equipment accounted for the largest share of non-home fires involving electrical failure or malfunction, with 59% of the total in the 2010 to 2014 period.[7]

---

[2] http://electricalsafety.lbl.gov/2014/11/13/electrical-fires/ (last accessed May 9, 2017).

[3] *Id.*

[4] http://www.nfpa.org/news-and-research/fire-statistics-and-reports/fire-statistics/fire-causes/electrical-and-consumer-electronics/electrical (last accessed May 9, 2017).

[5] Richard Campbell, National Fire Protection Association, *Electrical Fires*, at 2 (March 2017).

[6] *Id.*

[7] *Id.* at 21.

15. In fact, of the many causes of home fires involving electrical distribution or lighting equipment, wiring and related equipment accounted for the great majority of home fires and losses.[8] For example, wiring and related equipment accounted for 69% of fires, 56% of civilian deaths, 53% of civilian injuries, and 66% of direct property damage:[9]



16. Faulty electrical products also contribute to injuries or fatalities resulting from electrocution, particularly in the workplace. The United States Department of Labor monitors the number of deaths that occur in the workplace per year.[10] The construction industry suffers from the most work-related deaths, representing 21.4% of work-related fatalities per year,[11] and the four leading causes of construction industry fatalities are referred to as the "fatal four."[12] The fatal four are falls, struck by object, caught-in/between, and electrocution.[13]

17. Due to the injuries and fatalities arising from faulty electrical products, including light switches, the public interest is at-risk when such defective products enter the market.

***Compliance with Safety Standards is Crucial to Public Safety.***

---

[8] *Id.* at vi.

[9] *Id.*

[10] https://www.osha.gov/oshstats/commonstats.html (last accessed May 31, 2017).

[11] *Id.*

[12] *Id.*

[13] *Id.*

18. To protect against the dangers of electrical fires and the risk of electrocution, in the United States, governments, retailers, businesses, and consumers demand that the electrical products being used comply with industry standard safety requirements. In the case of the light switches manufactured and sold by Board-Tech and Defendants in this case, the prevailing standard is UL 20, for "General-Use Snap Switches." The UL in UL 20 stands for Underwriters Laboratories Inc., the company that developed the requirements.

19. At the federal level, the Occupational Safety and Health Administration ("OSHA") is responsible for ensuring workplace safety, and has established or adopted standards regarding the safety of lighting outlets and controls, the minimum clearance from light fixtures, and artificial light safety and emergency lighting. Among those standards are that workplace light switches must comply with UL 20.[14]

20. Likewise, the National Electric Code ("NEC"), published by the National Fire Protection Association, requires light switches in new buildings to be UL 20 compliant. The NEC has been adopted at the state or local level in all 50 states.[15]

21. Even when use of a UL 20 compliant light switch is voluntary under the law, consumers rely on labeling that a product complies with the safety standards at time of purchase, and many retailers such as Wal-Mart require compliance for products they sell, for both marketing purposes, and to head off potential product liability claims.[16]

22. In practice, no manufacturer can expect to successfully operate in the U.S. light switch market without representing that its switches comply with UL 20. And the form of

---

[14] https://www.osha.gov/dts/otpca/nrtl/list_standards.html (last accessed May 31, 2017).

[15] http://www.nfpa.org/nec/nec-adoption-and-use/nec-adoption-maps (last accessed June 15, 2017).

[16] *See* Mark R. Barron, *Creating Consumer Confidence or Confusion? The Role of Product Certification in the Market Today*, 11 Marq. Intell. Prop. L. Rev. 413, 424 (2007).

representation that governments and consumers routinely require is a certification by third parties, such as Underwriters Laboratories Inc. ("UL" or "Underwriters Laboratories").

23. As noted above, OSHA's established electrical safety guidelines include compliance with UL 20 for workplace light switches.[17] With rare exceptions,[18] before electrical equipment such as a light switch may be used in the workplace, it must be approved or "listed" by a Nationally Recognized Testing Laboratory ("NRTL"). OSHA implemented the NRTL program in 1988, and recognized laboratories are tasked with rigidly testing products according to the standards OSHA has adopted. Consumers and retailers have also come to rely on an NTRL approval, certification, or "listing" as a mark of safety.

24. In addition to developing many of the electrical testing standards adopted by OSHA, including UL 20, Underwriters Laboratories was one of the first NRTLs, and is the most widely recognized.[19] Over twenty billion products per year are awarded the UL Certification safety mark.[20] The Defendants' light switches at issue in this case have been "listed" or "classified" by Underwriters Laboratories.

25. The process by which a product obtains UL listing consists of the submission of purportedly representative samples of the product along with a payment, testing by UL's engineers in accordance with the standard—in this case UL 20—being evaluated, and

---

[17] https://www.osha.gov/dts/otpca/nrtl/list_standards.html (last accessed May 31, 2017).

[18] Specifically, the exceptions are when another Federal agency, or a state or local authority responsible for occupational safety has previously found the product complies with the NEC or in some circumstances when a manufacturer has determined its safety on the basis of testing data which the manufacturer makes available to the United States Assistant Secretary of Labor. 29 C.F.R. § 1910.399. *See also* OSHA, Training and Reference Materials: "Nationally Recognized Testing Laboratories (NRTLs)," https://www.osha.gov/dte/library/nrtl/ (last accessed May 31, 2017).

[19] http://www.ul.com/global/documents/offerings/industries/lighting/Downloads/UL-Lighting-sheet-ProductSafety-v2.pdf (last accessed May 31, 2017).

[20] *Id.*

subsequently the issuance of either a letter explaining why the product failed, or a written report of the successful results.[21]

26. In order to be certified as UL 20 compliant, a light switch must pass each test in a series of tests described in the booklet *UL Standard for Safety for General-Use Snap Switches, UL 20*, February 17, 2012. If a product fails any one of the tests, it does not comply with the UL 20 requirements. Generally, the tests pertaining to the light switches at issue in this case measure whether a light switch is able to maintain safe levels of current and temperature, and not show signs of damage when subjected to conditions of elevated use, strain, and temperature.[22]

27. Products that UL determines to have passed its testing are authorized to use UL's certification marks on their products, their packaging, and in marketing and advertising, but according to UL, ***it is the responsibility of the manufacturer*** to ensure that all of the products it sells bearing the UL mark actually comply with the standards tested for, not just the samples that were tested.[23] "The presence of the UL Certification Mark is ***the product manufacturer's representation*** that a product meets all applicable requirements at the time it was shipped from the factory."[24] Consumers rely on the UL mark or UL listing, and base their purchases on the belief that every product containing a UL mark or that is UL listed, actually complies with the UL standards.

---

[21] http://www.ul.com/customer-resources/preparing-for-your-ul-mark-evaluation/ (last accessed June 15, 2017).

[22] The UL 20 tests for AC only flush switches are: Contact Gap Test; Overload Test; Endurance (Resistive); Endurance (Inductive); Endurance (Tungsten); Temperature; Contact Gap (repeated); Dielectric Voltage; Security of leads; Pull-out/push-in terminals; Temperature/push-in terminals; Effect of heat on actuating members; Resistance to heat. *See* UL 20, 5.2.10 AC only flush switch testing.

[23] *See* http://www.ul.com/global/documents/offerings/industries/lighting/Downloads/UL-Lighting-sheet-ProductSafety-v2.pdf (last accessed May 31, 2017) ("If a product carries [the UL Listing Mark], it means UL found that a representative sample of that product met UL safety requirements ***and the manufacturer is representing that the product continues to meet those requirements***.") (emphasis added).

[24] http://services.ul.com/wp-content/uploads/sites/4/2015/09/EnhancedCertificationMark.pdf (last accessed June 29, 2017).

28. Upon information and belief, each of Defendants' light switches manufactured, marketed, advertised, and sold bearing the UL mark were in fact granted permission for such use and "listed" by Underwriters Laboratories as complying with UL 20. However, independent testing has revealed that the products sold by Eaton and Cooper to consumers do not in fact comply with those standards.

***Defendants Have Falsely Represented Compliance with UL Standards, to the Public's and Board-Tech's Detriment.***

29. Cooper is a lighting equipment manufacturing company located in Peachtree City, Georgia that was formed in 1997. In 2012, it was acquired by its immediate parent company, Eaton Electric Holdings LLC. Since the 2012 acquisition, Cooper and Eaton have sold some light switches using both the Eaton and Cooper brands,[25] but since 2015 have transitioned to the universal use of the "Eaton" brand name for all of their products.[26]

30. Eaton and Cooper sell and have sold their light switches through retailer websites including amazon.com and sears.com, through its distributors, and in "brick and mortar" retail stores throughout the country, including in New York, California, Illinois, and Texas.

31. On their website, and through their Buyer's Guide, Defendants have advertised to consumers that their switches comply with the UL 20 standard and are UL listed. For example, in their Buyer's Guide, Eaton and Cooper advertise that their commercial grade decorator combination switches are UL listed:[27]

---

[25]If any distinction between the companies exists, it is very blurred. As just one example, the URL www.cooperindustries.com leads to an Eaton website titled "Eaton - Electrical Sector."

[26]http://www.ledinside.com/news/2015/6/eaton_cooper_rebrands_lighting_business_as_eaton (last accessed May 31, 2017).

[27] http://www.cooperindustries.com/content/dam/public/wiringdevices/BuyersGuides/AHBG/E/AHBG-E-17.pdf (last accessed May 1, 2017).



32. Likewise, Defendants advertise that their 7600 Series Decorator switches are UL listed and UL 20 compliant:[28]

| Catalog No. | 7600 Series |
|---|---|
| **Amps V/AC** | 15A & 20A 120/277V Specification Grade Decorator Switches |
| **Wiring Type** | Back & side wire |
| **Testing & Code Compliance** | **cULus Listed** to UL 20, & CSA C22.2, no111, file no. E18704<br>**UL Verified** to Federal Spec WC-896E |
| **Environmental Specifications** | **Flammability:** Meets UL94 requirements; V2 rated<br>**Temperature Rating:** -20°C to 60°C (-4°F to 140°F) |
| **Electrical Specifications** | **Dielectric Voltage:** Withstands 1500V per UL 20<br>**Current Interrupting:** Yes, at full-rated current<br>**Temperature Rise:** Max. 30°C (86°F) after 100 cycles of overload and 30,000 cycles of endurance testing |
| **Mechanical Specifications** | **Terminal Accommodation:** #14 - 10 AWG<br>**Voltage Ratings:** Permanently marked on device<br>**Horsepower Ratings:** Rated for motor loads per UL 20:<br>    **15A:** @ 120V/AC = 1/2 HP, @ 240V/AC = 2 HP; max. amps 12A<br>    **20A:** @ 120V/AC = 1 HP, @ 240V/AC = 2 HP;  max. amps 16A |

33. Defendants also sell their light switches at retailers including The Home Depot and Lowe's, and advertise online through websites including homedepot.com and lowes.com that their switches are UL 20 compliant or UL listed. For example, Defendants advertise on

---

[28]http://www.cooperindustries.com/content/dam/public/wiringdevices/products/documents/spec_sheets2/decorators witches_specsheet.pdf (last accessed June 13, 2017).

homedepot.com that their 15 Amp Single Pole Combination Switch and Dimmable LED Nightlight is UL listed.[29]

34. In fact, Defendants' claims that their light switches are UL 20 compliant and UL listed are materially false and misleading. Board-Tech has engaged an independent engineer to conduct testing on random samples of Eaton and Cooper light switches in accordance with the UL 20 testing procedures and standards. This testing revealed that, contrary to Defendants' representations to consumers that all of their switches comply with the UL 20 standards, Defendants' switches failed one of the first tests in the battery prescribed by the UL guidelines: the Overload test.

35. In the Overload test, a light switch is subjected to 100 "cycles," or "on" periods at voltage 4.8 times the rated current. To pass this test, the switch should be able to complete 100 cycles and continue to perform its function with no signs of wear or defects that would diminish its reliability or usefulness. Defendants' tested light switches became inoperable before the completion of 100 cycles. Failure on this test represents an unacceptable level of danger of fire or electrocution for the consumers who have been misled by Defendants' false advertising.

36. Because Defendants' light switches failed the Overload test, testing concerning additional UL 20 requirements was unnecessary—a failure on one test in the procedure is a complete failure.[30]

37. Because Defendants' light switches do not pass the UL 20 testing requirements, their advertising that their light switches are UL 20 compliant are false and misleading. And because

---

[29]http://www.homedepot.com/p/Eaton-15-Amp-Single-Pole-Combination-Switch-and-Dimmable-LED-Nightlight-Light-Almond-7738LA-BOX/207115272?keyword=15+Amp+Single+Pole+Combination+Switch+and+Dimmable+LED+Nightlight%2C+Light+Almond (last accessed May 9, 2017).

[30]Underwriters Laboratories, *UL Standard for Safety for General-Use Snap Switches, UL 20* (February 17, 2012).

Defendants have an obligation to ensure that *all* of their products bearing the UL mark are compliant, not just the samples they submit to UL for testing, Defendants' advertising that their light switches are UL listed or certified is false and misleading.

38. Eaton and Cooper's false and misleading advertising has caused and will continue to cause Board-Tech injury. Consumers believe that a product bearing a UL certification mark and advertising that the product is UL listed and compliant means the product actually *is* UL compliant. Defendants' false and misleading advertising has deceived consumers, and Defendants have unjustly profited from sales of their light switches based on this deception. In contrast, Board-Tech's light-switches are UL listed and are UL compliant. Board-Tech has expended and will continue to expend significant resources to ensure that its products sold in the U.S. comply with the the UL 20 standards. Board-Tech has suffered and will continue to suffer economic harms, including loss in sales caused by Defendants' actions.

39. Because compliance with UL 20 is federally required by OSHA's workplace regulations, and required under building codes throughout the 50 states, Defendants' false representations about their products' UL compliance are material to consumers' purchasing decisions. And these false and misleading representations have harmed consumers and posed a genuine safety risk. Safety standards such as UL 20 are intended to lessen the billions of dollars in property damage and thousands of deaths caused by electrical fires. Purchasers choosing Eaton and Cooper products based on Defendants' false & misleading advertising have been placing, and will continue to unknowingly place their families, workers, and students at risk unless Defendants actions' cease.

## **FIRST CAUSE OF ACTION**

**(False Advertising Under the Lanham Act, 15 U.S.C. § 1125(a) against all Defendants)**

40. Board-Tech's allegations from Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

41. Defendants, in connection with goods sold and used in interstate commerce and throughout the 50 states, have made and continue to make false statements of fact and false representations of fact as to the nature, characteristics, quality, and safety of their goods.

42. Defendants' false statements of fact and false representations of fact in promoting their respective light switches as UL Compliant and UL listed are false and misleading in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

43. Defendants' false and misleading statements of fact and misrepresentations of fact concerning their light switches were made, and continue to be made, in commercial advertising, product promotions, and on product labels in a manner material to the public's decision to purchase Defendants' products instead of those of competitors, including Board-Tech.

44. Defendants' false and misleading statements are commercial advertisements and promotional materials that Defendants have placed into interstate commerce in connection with the sale and/or marketing of its light switches.

45. The above-described acts of Defendants actually deceived, or have the tendency to deceive, a substantial segment of consumers who see or hear such representations.

46. The above-described acts of Defendants are material, in that they are likely to influence a consumer's purchasing decision.

47. Board-Tech is a competitor of Defendants in that Board-Tech manufactures, markets, and sells light switches with similar features and models, and which are UL 20 listed and UL 20 compliant.

48. Because U.S. consumers and widespread regulations demand UL compliance of their light switches, and because the switches at issue are literally a necessity to keep the lights on, all or nearly all of the sales of Defendants' falsely advertised light switches would otherwise have been sold to their competitors, including Board-Tech. As a result of Defendants' false and misleading advertising, Board-Tech has suffered a direct diversion of sales of its UL 20 compliant products to Defendants.

49. Unless Defendants' activities cease, Defendants will unjustly profit from sales of its products that are based on consumer reliance on the false statements that it has made and is making about its products.

50. Additionally, Board-Tech has incurred, and will continue to incur, liability for costs and attorney's fees.

51. Board-Tech is entitled under 15 U.S.C. § 1117 to actual damages to be determined at trial, to have such damages trebled, to disgorgement of Defendants' profits, and to be awarded its costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### (New York General Business Law § 349)

52. Board-Tech's allegations from Paragraphs 1 through 39 and 41 through 51 are incorporated herein by reference with the same force and effect as if set forth in full below.

53. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches to consumers in New York, and throughout the United States.

54. Defendants have engaged in advertising light switches to consumers. Such advertisements are false and misleading representations in that they represent to consumers that the Defendants' light switches comply with UL safety standards.

55. As a result of Defendants' acts, Board-Tech, as a competitor of Defendants, has suffered and will continue to suffer damages to its business reputation and goodwill and the loss of sales and profits.

56. Consumers have reasonably relied on Defendants' representations about their products' UL compliance.

57. The above-described acts constitute a deceptive act and practice, in violation of Section 349 of the New York General Business Law.

## <u>THIRD CLAIM FOR RELIEF</u>

### (New York General Business Law § 350)

58. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, and 53 through 57 are incorporated herein by reference with the same force and effect as if set forth in full below.

59. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches to consumers in New York, and throughout the United States.

60. Defendants have engaged in advertising light switches to consumers. Such advertisements are false and misleading representations in that they represent to consumers that the Defendants' light switches comply with UL safety standards.

61. Defendants' false and misleading advertising was and is materially misleading because consumers demand, and many regulations require, UL standard compliance.

62. Consumers have reasonably relied on Defendants' representations about their products' UL compliance.

63. The above-described acts constitute false advertising in violation of Section 350 of the New York General Business Law.

## FOURTH CLAIM FOR RELIEF

### (California Business and Professions Code § 17500)

64. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, 53 through 57, and 59 through 63 are incorporated herein by reference with the same force and effect as if set forth in full below.

65. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches in California, and throughout the United States.

66. Defendants have engaged in advertising to the public offering light switches. Such advertisements are false and misleading representations in that they represent to consumers that the Defendants' light switches comply with UL safety standards.

67. Defendants engaged in the advertising herein alleged with the intent to induce members of the public to believe that the light switches were compliant with UL safety standards.

68. Upon information and belief, in making or disseminating the statements herein alleged, Defendants knew, or with the exercise of reasonable care should have known, that the statements were false and misleading and so acted in violation of Sections 17500 *et seq.* of the California Business and Professions Code.

16

69. Unless restrained by this Court, Defendants will continue to engage in false and misleading advertising, as alleged above, in violation of Section 17500 *et seq.* of the Business and Professions Code.

## FIFTH CAUSE OF ACTION

**(Unlawful and Fraudulent Business Practices in Violation of California Business and Professions Code § 17200)**

70. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, 53 through 57, 59 through 63, and 65 through 69 are incorporated herein by reference with the same force and effect as if set forth in full below.

71. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches in California, and throughout the United States.

72. Defendants have violated California Business and Professions Code § 17200 *et seq.* by engaging in unlawful or fraudulent conduct including, but not limited to:

> (i)  violating California Civil Code § 1770(a)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

> (ii)  violating California Civil Code § 1770(a)(9) with the intent not to sell them as advertised;

> (iii) violating California's False Advertising Law, California Business and Professions § 17500; and

> (iv) violating the Lanham, Act, 15 U.S.C. § 1125(a).

73. The acts and practices alleged herein constitute unlawful, unfair and/or deceptive business practices as identified herein to the present day.

74. Board-Tech is entitled to restitutionary damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (Illinois Consumer Fraud Act 815 Ill. Comp. Stat. Ann. 505/1)

75. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, 53 through 57, 59 through 63, 65 through 69, and 71 through 74 are incorporated herein by reference with the same force and effect as if set forth in full below.

76. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches in Illinois, and throughout the United States.

77. Defendants intended that consumers would rely on their representations that the light switches were UL compliant in purchasing Defendants' light switches.

78. Defendants' conduct was unfair in that it causes substantial injury to consumers who believe the Defendants' light switches complied with UL safety standards.

79. Defendants' above-described acts constitute an unfair practice in violation of the Illinois Consumer Fraud Act.

80. As a result of Defendants' acts, Board-Tech, as a competitor of Defendants, has suffered and will continued to suffer damages to its business reputation and goodwill and the loss of sales and profits.

## SEVENTH CAUSE OF ACTION

**(False Advertising and Unfair Competition under Texas Common Law)**

81. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, 53 through 57, 59 through 63, 65 through 69, 71 through 74, and 76 through 80 are incorporated herein by reference with the same force and effect as if set forth in full below.

82. From on or about January 1, 2011, Defendants engaged in the acts and practices herein alleged while doing business, in that such acts and practices were done in the course of selling their light switches in Texas, and throughout the United States

83. Defendants falsely represented that their products complied with UL safety standards in the course of commercial advertising.

84. Upon information and belief, Defendants' representations actually deceived consumers, or had the tendency to deceive a substantial number of consumers, in that consumers believed the Defendants' light switches were UL compliant.

85. Defendants' statements are material in that the statements likely influence a consumer's purchasing decision.

86. As a result of Defendants' acts, Board-Tech, as a competitor of Defendants, has suffered, and will continue to suffer, damages to its business reputation and goodwill and the loss of sales and profits. Such damages include, but are not limited to, economic losses from reduced sales and sales opportunities.

87. Additionally, Board-Tech has incurred, and will continue to incur, liability for costs and attorney's fees.

## EIGHTH CAUSE OF ACTION

### (Common Law Unjust Enrichment)

88. Board-Tech's allegations from Paragraphs 1 through 39, 41 through 51, 53 through 57, 59 through 63, 65 through 69, 71 through 74, 76 through 80, and 82 through 87 are incorporated herein by reference with the same force and effect as if set forth in full below.

89. Defendants have received significant profits from the sale of its light switches to consumers who relied on Defendants' false statements and representations that their products complied with UL safety standards.

90. Defendants would not have made these sales or received the profits from these sales in the absence of the false statements regarding their products safety. Additionally, Defendants' profits have been unjustly increased because of the cost savings they have realized by failing to invest in the research, development, and manufacturing of products that comply with the stringent standards required by UL 20.

91. Defendants' profits and revenues from their falsely advertised light switches have come at the expense of their competitors, including Board-Tech.

92. Defendants have been unjustly enriched from its false and misleading statements and advertising practices, and should not be permitted to retain those ill-gotten gains.

### PRAYER

WHEREFORE, Board-Tech prays judgment against Defendants, and each of them as follows:

1.      For a finding that Defendants have engaged in false advertising in violation of 15 U.S.C. § 1125(a);

2.      For a finding that Defendants have engaged in deceptive acts and practices in violation of Section 349 of the New York General Business Law;

3.      For a finding that Defendants have engaged in false advertising in violation of Section 350 of the New York General Business Law;

4.      For a finding that Defendants have engaged in false advertising in violation of Section 17500 of the California Business and Professions Code;

5.      For a finding that Defendants have engaged in unlawful, unfair, and deceptive business practices in violation of Section 17200 of the California Business and Professions Code;

6.      For a finding that Defendants have engaged in unfair business practices in violation of the Illinois Consumer Fraud Act;

7.      For a finding that Defendants have engaged in false advertising and unfair competition in violation of the Texas common law;

8.      For a finding that Defendants' unlawful conduct was willful;

9.      For a finding that Defendants have been unjustly enriched as a result of their false and misleading advertising;

10.     For injunctive relief enjoining Defendants from making false and misleading statements about their products' compliance with UL standards or their UL listing;

11.     For injunctive relief requiring Defendants to issue appropriate corrective advertisements, reasonably designed to reach all people to whom their false and misleading advertising was disseminated, and retracting their false and misleading claims regarding their UL compliance and listing;

21

12.    For injunctive relief requiring Defendants to remove, recall, and destroy all marketing and advertising materials that falsely claim their products comply with UL standards or are UL listed;

13.    For actual damages incurred as a result of Defendants' conduct in an amount to be proven at trial, along with treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

14.    For disgorgement to Board-Tech Defendants' profits and cost savings from the sale of their falsely advertised products;

15.    For exemplary and punitive damages the Court finds appropriate and necessary to deter future willful conduct;

16.    For other such relief as the Court may deem just and proper.

Dated: July 5, 2017                          Kirkland & Ellis LLP


/s/ *R. Alexander Pilmer*
R. Alexander Pilmer (SBN: 5175526)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Email:  alex.pilmer@kirkland.com
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Derek M. Milosavljevic (*pro hac vice
application to be filed*)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500


*Attorneys for Plaintiff Board-Tech Electronic
Co., Ltd.*